[S. F. No. 10839. In Bank.—September 23, 1924.]

## REPUBLIC TRUCK SALES CORPORATION (a Corporation), et al., Appellants, v. GEORGE PEAK, etc., Respondent.

[1] APPEAL—ORDER DISCHARGING WRIT OF ATTACHMENT—ABSENCE OF SPECIFICATION OF GROUNDS AS BASIS FOR.—If any one of the grounds upon which a defendant predicated his motion to discharge a writ of attachment was valid, the order granting said motion which set forth specifically and in precise terms the defendant's asserted grounds of said motion and which was itself a general order without specifying any particular ground upon which it was based must be affirmed on an appeal from such an order.

[2] ATTACHMENT—CHATTEL MORTGAGE COVERING INDEBTEDNESS—DISCHARGE OF ATTACHMENT—WORTHLESSNESS OF SECURITY.—The fact that there is of record and unsatisfied at the date of the issuance and levy of a writ of attachment a chattel mortgage in favor of attaching plaintiffs covering an alleged indebtedness of the defendant to the plaintiffs does not constitute a sufficient ground upon which an order discharging the writ of attachment may be predicated, where pursuant to the authorization contained in subdivision 1 of section 538 of the Code of Civil Procedure the attaching plaintiffs, in their affidavit for attachment, stated that the payment of said indebtedness was secured by a chattel mortgage upon and by a pledge of personal property, but that such security had, without any act of theirs, become valueless.

[3] CORPORATIONS — FOREIGN CORPORATION DISQUALIFIED TO SUE—EFFECT OF DISQUALIFICATION UPON COPLAINTIFF — AGENCY — ATTACHMENT — PARTIES. — The fact that an attaching coplaintiff is disqualified from maintaining the action because of its noncompliance with the requirements of the laws of this state as to the terms upon which foreign corporations might maintain actions within this state does not disqualify the other plaintiff, which is also a foreign corporation and which has complied with said laws, from maintaining such action, where the actual relation of the plaintiffs to each other and to the obligations sued upon is that of principal and agent, the qualified plaintiff being the undisputed principal and the disqualified plaintiff being merely its agent and hence not a necessary party to the action at all except as the defendant, having dealt with said agent as a principal, might be entitled to charge whatever counterclaim or cross-demands he

---

2.  See 3 Cal. Jur. 442.

might have as to such agent against the real principal in their transactions.

[4] ATTACHMENT — MOTION TO DISCHARGE WRIT — INSUFFICIENCY OF GROUND.—A ground in a motion to discharge a writ of attachment that "the affidavit for attachment in this action is false and untrue and not in conformity with section 538 of the Code of Civil Procedure" in its allegation that the defendant was indebted to plaintiffs on a stated date upon an express contract for the direct payment of money in a specified sum is insufficient in two respects: first, if it is to be deemed to amount to a denial of the indebtedness upon which the action is brought and the attachment issued, it constitutes an attempt to put in issue and try out the merits of the case itself upon a motion to discharge the attachment, the general rule being that this may not be permitted; and secondly, the denial of an indebtedness to plaintiffs in the precise specified sum constitutes an admission of an indebtedness in any sum less than the amount so stated.

[5] ID. — SPECIFICATIONS IN GENERAL TERMS — INSUFFICIENCY OF. — Specifications in a motion to discharge a writ of attachment setting forth in general terms that the affidavit for attachment does not conform with the provisions of section 538 of the Code of Civil Procedure and that the attachment was improperly and irregularly issued, are not sufficiently specific to sustain a motion or order for the discharge of the writ of attachment.

[6] ID.—SUFFICIENCY OF AFFIDAVIT—SPECIFICATIONS.—Conceding, without deciding, that a specification in a motion to discharge a writ of attachment that the affidavit for attachment does not conform with subdivision 4 of section 538 of the Code of Civil Procedure constitutes a sufficient specification, the specification is groundless where such affidavit discloses that it does in fact exactly conform with said subdivision of said section.

[7] ID.—ORIGINAL COMPLAINT—PLACE OF OBLIGATIONS AND PAYMENT— AFFIDAVIT FOR ATTACHMENT.—Where an original complaint in several counts does not in any of the counts state whether or not the contract or obligation was made or was payable in this state, and the affidavit for attachment, as to each count, contains the averment that the contract or obligation was made and was payable in this state, such original complaint, taken with said affidavit and the bond for attachment, was sufficient to justify the issuance and levy of a writ of attachment.

[8] ID.—MOTION TO DISCHARGE — PLEADINGS — AMENDMENTS. — If the original pleadings and papers filed by the plaintiff in an action show, even though imperfectly, that the case is one coming within

the provisions of the chapter on attachments, the defendant moving to discharge such attachment must do so upon the state of the case as the plaintiff's amendments to his pleadings and attachment papers present at the time he makes said motion.

[9] ID. — PLACE OF MAKING CONTRACTS — PLACE OF PAYMENT — CONSTRUCTION OF CONTRACTS.—An agreement relating to the purchase and sale of motor vehicles and parts and adjusting differences between the parties which had arisen under a previous contract, having provided that it "shall supersede and be substituted for all other agreements and contracts heretofore entered into or executed by the parties hereto," and having expressly recited that it was executed at a named city within this state, any contractual obligations created by or under the terms of said previous contract were, in so far as they were specifically made the subject of the later agreement, superseded by it; and as to those obligations the place of their performance, no matter where it was under the previous contract, was changed to the place wherein the later agreement was made, and presumptively, at least, was to be performed, and this being so, whatever obligations, either existing previously or to be created thereafter, by the buyer, were under the later agreement payable in this state.

[10] ID.—PLACE OF PAYMENT—ACCRUED OBLIGATIONS — CONSTRUCTION OF LATER CONTRACT.—The obligations of the buyer which had accrued and were payable in this state under such second contract were unaffected by the execution of a third contract, which contained no express reference to such obligations, nor any provision for the payment or for the time or place of payment of any such accrued obligations, and which only referred to the former agreements by providing that "This agreement when executed shall supersede and annul all former agreements and orders between said parties, relative to the sale of Republic trucks," such quoted provision referring only to the terms and conditions under which sales of trucks were to be made under the provisions of said third agreement; and this being so, another clause in said third agreement, which provided that the place of the making and performance thereof should be a sister state, cannot be construed to cover the liabilities of the buyer which had accrued under said second contract.

[11] ID. — INTERPRETATION OF CONTRACTS — MOTION TO DISCHARGE — PROVINCE OF COURT.—The obligations of the buyer, and the place of making and payment thereof, having been determinable from the several contracts between the parties, nothing that was stated in the affidavits or counter-affidavits filed by or on behalf of the respective parties as to their respective interpretations of the meaning and effect of such contracts could affect the situation or be considered by the trial court in passing upon the buyer's motion

9. See 3 Cal. Jur. 417.

to discharge an attachment upon the ground that the contracts were not made and were not payable in this state, which attachment issued in an action brought to enforce payment of said obligations.

[12] ID.—PLACE OF PAYMENT — CONTRACTS—CONSTRUCTION.—The fact that some portion of the several obligations sued upon and for the security of which the attachment was sought had accrued under the terms of said third agreement, and were therefore payable in the sister state did not affect the right of the plaintiffs to have said attachment sustained for the protection of such other of the plaintiffs' claims as were identifiable as arising under the terms of the second contract, and as being thus payable in this state.

[13] MORTGAGES—WORTHLESSNESS OF SECURITY — PERSONAL ACTION.— The policy embraced in section 726 of the Code of Civil Procedure providing for but one form of action to foreclose a mortgage is not violated by permitting the creditor to bring a personal action upon the debt where the lien of the mortgage has become valueless or is lost.

---

(1) 4 C. J., p. 662, sec. 2557.   (2) 6 C. J., p. 422, sec. 981 (1926 Anno.).   (3) 14a C. J., p. 1357, sec. 4065.   (4) 6 C. J., p. 421, sec. 981.   (5) 6 C. J., p. 444, sec. 1031.   (6) 6 C. J., p. 444, sec. 1031. (7) 6 C. J., p. 128, sec. 194.   (8) 6 C. J., p. 423, sec. 987 (1926 Anno.).   (9) 13 C. J., p. 582, sec. 582 (1926 Anno.).   (10) 13 C. J., p. 582, sec. 582 (1926 Anno.); 35 Cyc., p. 127 (1926 Anno.).   (11) 35 Cyc., p. 123.   (12) 6 C. J., p. 77, sec. 105.   (13) 11 C. J., p. 746, sec. 588 (1926 Anno.).

APPEAL from an order of the Superior Court of the City and County of San Francisco discharging a Writ of Attachment. James M. Troutt, Judge. Reversed.

The facts are stated in the opinion of the court.

Preston & Duncan and Frank Hall for Appellant.

Gavin McNab and Nat Schmulowitz for Respondent.

RICHARDS, J.—This is an appeal by plaintiffs from an order discharging a writ of attachment theretofore procured by them and levied upon certain property of the defendant. The plaintiffs herein commenced this action against said defendant on February 14, 1922, to recover

---

13. See 18 Cal. Jur. 249.

the aggregate sum of $50,075.19, with interest thereon until paid. The original complaint is in three counts, in each of which the corporate character of the plaintiff Republic Sales Corporation is alleged to be that of a corporation organized and existing under and by virtue of the laws of the state of Delaware, and that of the plaintiff Republic Motor Truck Company Inc. to be that of a corporation organized and existing under and by virtue of the laws of the state of New Jersey. In the first count of said original complaint it is alleged that there is due, owing, and unpaid from defendant to said plaintiffs the sum of $38,234.62 on account of an unpaid balance of the purchase price of certain motor-trucks, motor vehicles, and goods, wares, and merchandise sold and delivered by plaintiffs to said defendant. By the second count it is alleged that pursuant to the terms and provisions of a certain contract entered into between said plaintiffs and said defendant on July 20, 1921, by the terms of which said plaintiffs agreed to sell and said defendant agreed to purchase from plaintiffs motor-trucks, motor vehicles, and goods, wares, and merchandise, there is due and unpaid to plaintiffs from said defendant the sum of $3,416.99 on account of certain sight drafts drawn by plaintiffs on said defendant, with bills of lading attached, for motor-trucks and motor vehicles shipped by plaintiffs to defendant and which remain unpaid. By the third count in said complaint it is alleged that pursuant to the terms and conditions of that certain contract entered into between plaintiffs and defendant on July 20, 1921, the said plaintiffs had advanced to said defendant the sum of $8,423.58, which said sum the said defendant then and there agreed to apply on certain drafts then remaining unpaid in the Citizens National Bank of San Francisco, and which said sum the said defendant failed and refused to pay on account of said drafts, but converted to his own use and benefit and has failed and refused to repay to said plaintiffs. The plaintiffs therefore pray judgment against said defendant for the sum of $50,075.19, with interest and costs.

Upon filing this original complaint the plaintiff presented and filed an affidavit for attachment, wherein it was deposed that the defendant was indebted to said plaintiffs in the sum of $50,075.19 upon an express contract for the direct

payment of money, and that such contract was made and is payable in this state; that the payment of the same was secured by a chattel mortgage upon personal property and also by a pledge of personal property, but that such security had, without any act of the said plaintiffs, or either of them, become valueless. The said affidavit also contains the usual statement that the said attachment is not sought, nor is the said action prosecuted, to hinder, delay, or defraud any creditor or creditors of said defendant. An undertaking in due form and in the sum of $40,000 was presented and filed with said affidavit for attachment, and thereupon and on said February 14, 1922, a writ of attachment was issued and levied upon certain personal property of the defendant. It appeared from the sheriff's return upon said writ that the said property was in the custody of the sheriff and was subject to two prior attachments. Thereafter and on May 26, 1922, the said plaintiffs, by leave of court, presented and filed their first amended complaint in the action, which is substantially in form and legal effect the same as the original complaint, except that the amount alleged to be due as interest upon the sum set forth in the first count in said original complaint is specifically set forth, thereby increasing the specified amount for which recovery in the aggregate is sought to the sum of $56,743.46. Thereafter, and on December 20, 1922, the plaintiffs presented and filed a second amended complaint, wherein at the outset it is recited that the same is presented and filed pursuant to a stipulation between counsel for the respective parties to the action, but of which stipulation the form, scope or effect thereof is not otherwise set forth in the record before us. This second amended complaint is in a single count. With respect to the corporate character of the two plaintiffs to the action its averment is in the same form as that embraced in the two pleadings which preceded it, but with respect to the plaintiff Republic Motor Truck Company Inc. it is averred that in the transactions which are set forth in each and all of said pleadings the said Republic Motor Truck Company Inc. was acting merely as the agent of its principal, the Republic Motor Sales Corporation, and not otherwise, and was joined as a party plaintiff with its said principal, the Republic Motor Sales Corporation, in the original and first amended complaints by inadvertence,

and that the said Republic Motor Truck Company Inc. is only retained as a plaintiff herein in this second amended complaint in order to permit the said defendant Peak to assert whatever claims he might have against said Republic Motor Truck Company Inc. by reason of the demands set forth in his answer to the original and first amended complaints herein. Having made these averments the Republic Sales Corporation proceeds to set forth in said second amended complaint a state of facts existing prior to the commencement of this action, which, although embraced in a single count, are substantially the same, in so far as they relate to the original and aggregate amount of the indebtedness alleged to exist between the defendant and said Republic Truck Sales Corporation, as those alleged in the original and first amended complaints herein. The said plaintiff proceeds, however, to allege that on the third day of August, 1921, the said defendant George Peak, in order to secure said plaintiff Republic Truck Sales Corporation on account of these several forms of indebtedness then existing or thereafter to come into being, executed a chattel mortgage to and in favor of said Republic Truck Sales Corporation covering such indebtedness upon certain specified personal property. The said plaintiff proceeds to allege that the said personal property thus attempted to be subjected to the lien of said chattel mortgage was the stock in trade of a merchant; that after the date of the execution and recordation thereof the Pioneer Motor Company in December, 1921, commenced two certain actions against the defendant George Peak upon claims existing prior to and antedating the existence of said mortgage, for large sums of money, and in said actions caused two attachments to be issued and levied upon the said property covered by said mortgage. It also alleges that one Ethel M. Peak also, and in October, 1922, commenced a certain action against George Peak to recover other large sums of money, and also caused an attachment to be levied upon said property; that by reason of the fact that said mortgage was placed upon the stock in trade of a merchant which is not mortgageable and of the fact that said attachments so placed thereon are for sums of money in excess of the value of said property, and if valid take precedence over said mortgage, the same has become valueless without any act or fault of said

plaintiff. The plaintiff asks that the Pioneer Motor Company and the said Ethel M. Peak be brought into said action and be required to set forth the extent and merits of their respective claims to said property. The plaintiff prays judgment against said George Peak for $51,810.86, with interest, and further prays that the respective rights and interests of the said parties claiming to hold liens upon said property be determined in said action; that the said plaintiff Republic Motor Truck Company Inc. be dismissed from said action and that the plaintiff Republic Truck Sales Corporation have such relief as is proper therein. At the time of the filing of the said plaintiff's second amended complaint it presented and filed an amended undertaking on attachment and also an amended affidavit for attachment. In the first of these it was asserted that it was presented and filed for the purpose of removing certain ambiguities in the first undertaking, particularly in view of the fact that by said second amended complaint two new defendants had been added in said action. In the amended affidavit the affiant set forth the same matter alleged in the second amended complaint with reference to the fact that the Republic Motor Truck Company was merely the agent of its coplaintiff and had by inadvertence been made a party plaintiff in the action.

After the dates of the presentation and filing of each and both of the two amended complaints herein the defendant George Peak, on March 23, 1923, moved the court in which said action was pending for an order vacating and discharging the attachment issued and levied at the instance of the said plaintiffs on or about February 14, 1922. Said motion was made upon four grounds, as appears from the notice of said motion. These were: (1) That there was in existence and of record in the office of the county recorder of the city and county of San Francisco at the time of the filing of the several complaints in this action and at the time of the issuance and levy of said attachment a chattel mortgage purporting to cover and secure all of the alleged indebtedness of said defendant to said plaintiffs which has never been satisfied or discharged of record or at all by said plaintiffs; (2) that the writ of attachment issued at plaintiffs' instance in said action was issued upon an affidavit for attachment which was based upon a purported claim

of said plaintiffs against said defendant as set forth in the original complaint on file herein; that the Republic Motor Truck Company Inc., one of said plaintiffs, was and is a foreign corporation, doing intrastate business in the state of California during all of the times mentioned in said several complaints, and that the said Republic Motor Truck Company Inc. has not complied with the laws of the state of California prescribing the terms upon which foreign corporations can maintain actions in the state of California; that the original complaint in this action, and also the affidavit and undertaking upon attachment therein, showed that the said Republic Motor Truck Company was a joint plaintiff, suing upon a joint obligation, and hence that said plaintiffs did not have legal capacity to sue or maintain said action in said court against said defendant therein; (3) that the affidavit for attachment in this action was and is false and untrue and not in conformity with the terms and provisions of section 538 of the Code of Civil Procedure in the following particular respects; (a) that said affidavit is false in respect to its alleged indebtedness of George Peak on the fourteenth day of February, 1922, upon an express or upon any contract for the direct payment of money in the sum specified therein; (b) that the said affidavit was and is untrue as to its allegation that the contract referred to therein was made or is payable in the state of California; (c) that said affidavit does not conform to the provisions of subdivision 4 of section 538 of the Code of Civil Procedure; (4) that said writ of attachment was improperly issued; (5) that said writ of attachment was irregularly issued. The notice of said motion further stated that it would be made upon the specified pleadings and files in said action and also upon certain affidavits of said defendant and upon an affidavit of one Frank H. Corey, deputy Secretary of State of the state of California, and upon oral testimony to be adduced upon the hearing of said motion.

When the said motion of the defendant came on for hearing pursuant to said notice, the pleadings, records, and files in the action referred to in said notice were presented to the court, together with the affidavits of said defendant and of the deputy Secretary of State. There was also presented on behalf of the plaintiffs the said plaintiffs'

amended undertaking and affidavit for attachment and also a counter-affidavit in reply to certain portions of the affidavits of said defendant Peak, to which more particular reference will hereafter be made. The motion to discharge said attachment was heard and submitted upon the foregoing papers and exhibits, and thereafter, and on May 16, 1923, the trial court granted said motion. In its order so doing the court set forth specifically and in precise terms the defendant's asserted grounds of said motion and thereupon by a general order granted the same without specifying any particular ground upon which its said order was based. [1] It follows, of course, that if any one of the grounds upon which the defendant predicated his said motion was valid, the order granting said motion must be affirmed.

[2] The first° asserted ground upon which the said defendant predicated his motion to discharge said attachment was the ground that there was of record and unsatisfied at the date of the issuance and levy of said attachment a chattel mortgage covering the alleged indebtedness of the defendant to the plaintiffs. As to this first asserted ground of said motion we have searched vainly through the briefs and arguments of the respondent herein for either reasoning or authority to sustain it, and in view of the fact that subdivision 1 of section 538 of the Code of Civil Procedure expressly authorizes the issuance of an attachment in cases where the mortgage or pledge originally given to secure the contract sued upon has, without any act of the creditor, become valueless, and that the plaintiffs herein assert such to be the fact in their affidavit for attachment, it would seem obvious that the first ground upon which the defendant sought to have this attachment discharged could form no basis for the order discharging the same.

[3] The second asserted ground upon which the defendant sought to have this attachment discharged was the ground that the Republic Motor Truck Company Inc., one of the plaintiffs in the action, was a foreign corporation engaged at the time of the issuance of said writ of attachment in intrastate business within the state of California and that said corporation had not complied with the laws of the state of California prescribing the terms upon which such foreign corporation could maintain an action in the courts of said state. The defendant in asserting this ground

as a basis for said motion further asserts that the plaintiffs Republic Sales Corporation and Republic Motor Truck Company Inc. are joint plaintiffs suing upon a joint obligation, and that the asserted legal incapacity of one of said plaintiffs to maintain said action is fatal to the right of either to maintain the same, or to enforce a writ of attachment therein. As to the fact of the incapacity of the Republic Motor Truck Company Inc. to commence or maintain an action in this state it would seem that the affidavit of the deputy Secretary of State must be taken to have sufficiently shown that said corporation had not complied with the requirements of the laws of California as to the terms upon which foreign corporations might maintain actions within the state of California, but it does not follow therefrom that the coplaintiff of said disqualified corporation, which admittedly is qualified by its compliance with said laws to maintain this action and to have a writ of attachment issued for its benefit therein, may not do so notwithstanding the alleged disqualification of its coplaintiff herein. The merit of this ground of the defendant's motion must be found, if at all, in the further statement therein that these plaintiffs are joint plaintiffs and that the obligations sued upon by them are joint obligations; since if the plaintiffs are joint and several creditors of the defendant, and if the obligation or obligations upon which they sue are joint and several obligations, the incapacity of one of said plaintiffs would not affect the capacity of the other to maintain this action and to be entitled to whatever ancillary or final relief therein the facts as shown in the pleadings and as disclosed upon the hearing would entitle it to receive. (Code Civ. Proc., sec. 578.) The defendant in making his above contention relies wholly upon the plaintiffs' pleadings and does not attempt by way of affidavit or otherwise to produce any proof showing that these two plaintiffs are joint plaintiffs or that the obligation or obligations sued upon are joint obligations. The plaintiffs' original complaint is silent as to the question of the relation of these plaintiffs to each other as to being a joint or joint and several relation and also as to the nature in this regard of the obligations which formed the basis for the writ. But at the time the defendant made his motion to discharge this attachment whatever uncertainty there might have been in

this regard in the earlier pleading of these plaintiffs had been entirely removed by the amendments thereto, which showed the actual relation of these plaintiffs to each other and to the obligations sued upon to have been that of principal and agent, the qualified plaintiff in the case being the undisputed principal and the disqualified plaintiff being merely its agent and hence not a necessary party to the action at all except as the defendant, having dealt with said agent as a principal, might be entitled to charge whatever counterclaim or cross-demands he might have as to such agent against the real principal in said transactions. Not only do the plaintiffs' pleadings on file at the time of the making and hearing upon this motion show these to be the facts, but the defendant himself in his affidavit in support of his said motion expressly admits and avers that the Republic Truck Sales Corporation was the undisclosed principal in the contract of May 17, 1921, wherein the Republic Motor Truck Company appeared to be the principal party to said contract, while as to the main contract and as to the chattel mortgage the Republic Truck Sales Corporation is the only party appearing upon the face of those transactions to be the party beneficially interested therein. This being so it follows that there was nothing before the trial court upon which to base a ruling that the plaintiffs herein were joint plaintiffs or that the writ of attachment was wrongly issued and should be quashed for that reason.

[4] This leaves as the only remaining basis for said motion and for the order granting the same the third ground stated by the defendant in his notice of said motion which is "that the affidavit for attachment in this action is false and untrue and not in conformity with section 538 of the Code of Civil Procedure." The assertion that the said affidavit "is false and untrue" is supported by several particular statements as to wherein its falsity and untruth consists. The first of these specifications is "that the said affidavit is false and untrue in its allegation that the defendant George Peak was indebted to the plaintiffs in the above entitled action on the 14th day of February, 1922, upon an express contract or any contract whatsoever for the direct payment of money in the sum of $50,075.19." As to this specification it is obviously insufficient in two respects: First, if it is to be deemed to amount to a denial of the

indebtedness upon which the action was brought and the attachment issued, it would constitute an attempt to put in issue and try out the merits of the case itself upon a motion to discharge the attachment, and the general rule is that this may not be permitted. (3 Cal. Jur., p. 541; *Olmstead* v. *Rivers,* 9 Neb. 234 [2 N. W. 366]; *Hamilton* v. *Johnson,* 32 Neb. 730 [49 N. W. 703].) But an even more vital defect in this specification is that its denial of an indebtedness to the plaintiffs in the precise sum of $50,075.19 constitutes an admission of an indebtedness in any sum less than the amount so stated.

The second of said specifications of the respects in which said affidavit is asserted to be false and untrue is "That said affidavit was and is untrue in connection with the allegation therein contained that the contract was made and is payable in the state of California." **[5]** This is in reality the only specification upon which the respondent herein can rely to sustain the order of the trial court discharging this attachment, since as to his remaining two specifications in the first of these he merely sets forth in general terms that the affidavit does not conform with the provisions of section 538 of the Code of Civil Procedure and that said attachment was improperly and irregularly issued. As to these grounds of objection it has been held that they are not sufficiently specific to sustain a motion or order for the discharge of the writ. (*Donnelly* v. *Strueven,* 63 Cal. 182; *Freeborn* v. *Glazer,* 10 Cal. 337.) **[6]** As to the last of these specifications, viz., that the said affidavit does not conform with subdivision 4 of section 538 of the Code of Civil Procedure, it will suffice to say that, conceding, though not deciding, that this would be a sufficient specification, an inspection of the affidavit discloses that it *does* in fact exactly conform with said subdivision of said section. The question as to the right of the trial court to discharge this attachment upon the ground that the contract or contracts of the parties which form the bases for this attachment were not nor was any of them made or payable in the state of California is to be viewed from two aspects: First, from that of the pleadings in the case, and, second, from that of the contract or contracts of the parties relating to the subject matter of this action and in existence at the time of its commencement and of the issuance and levy of said

writ.   Looking first to the plaintiffs' pleadings, which are
the only pleadings presented to us in this record, we find
that the original complaint of the plaintiffs upon the
strength of which this attachment was procured is in three
counts.   The first of these embraces a cause of action for
the recovery of an unpaid balance of $38,234.62, alleged to
be due upon the purchase price of certain motor-trucks, motor
vehicles, and goods, wares, and merchandise sold and delivered
by plaintiffs to defendants pursuant to the terms and pro-
visions of a certain contract entered into between said parties
on July 20, 1921.   This contract is not set forth but is
pleaded according to its substance and effect.   The original
complaint as to this count does not state whether or not said
contract was made or was payable in this state, but in this
respect the affidavit of attachment affirmatively states that
said contract was made and was payable in this state.   By
the second count in said original complaint recovery is
sought for the sum of $3,416.99, alleged to be due on ac-
count of certain unpaid sight drafts drawn by plaintiffs
on defendant for motor-trucks and motor vehicles sold
and delivered by plaintiffs to defendant.   As to this count
also the affidavit of attachment ekes out the silence of the
complaint as to where the purchase and sale of these ve-
hicles was made or where the sums due thereon were pay-
able, by its above statement that the contract for these pur-
chases also was made and was payable in this state.   The
third count in said original complaint is for the recovery
of $8,423.58, alleged to be a sum of money which the plain-
tiffs advanced to the defendant for the purpose of its ap-
plication by him to the payment of certain unpaid drafts
upon the defendant, payable to, but remaining unpaid, the
American National Bank of San Francisco, but which sum
of money the defendant failed to apply to such purpose or
to return to plaintiffs, but converted to his own use.   As
to this count also the affidavit of attachment contains the
averment that this obligation also was made and was pay-
able in this state.   [7]   It thus appears that the plaintiffs'
original complaint, taken with the affidavit and bond for
attachment, was sufficient to justify the issuance and levy
of such writ.   It also appears upon the face of the original
affidavit for said attachment that the aggregate of the several
sums of money for the recovery of which the action was

brought had originally been secured by a chattel mortgage upon personal property and also by an agreement for a pledge of personal property, but that this security had, without any act of the plaintiffs, become valueless. In this respect also the affidavit conformed to the requirements of section 538 of the Code of Civil Procedure. On May 26, 1922, the plaintiffs filed, by leave of court, their first amended complaint which substantially followed the form of the original complaint except in two respects. It increased the amount alleged to be due and unpaid by defendant upon the second count in said complaint for the sum due upon the dishonored sight drafts to the sum of $10,085.26, thereby increasing the aggregate amount of the recovery sought. It also averred that as to the advancements alleged to have been made by plaintiffs for the payment of certain other unpaid sight drafts these had been made under the terms and provisions of the contract of July 20, 1921. On December 22, 1922, the plaintiffs, pursuant to stipulation between the parties to the action, filed their second amended complaint, certain of the allegations of which respecting the parties to the action have been hereinbefore adverted to. In this second amended complaint the plaintiffs attempted to set forth in complete detail and with the aid of the original documents embraced therein in the form of exhibits the entire series of transactions between themselves and said defendant. Before essaying to deal with this pleading and with the several contracts upon which it counts it should be brought to mind that the action was commenced, and the attachment therein sought, issued and levied on February 14, 1922; that the first and second amendments to the original complaint therein were filed upon the dates above set forth; that upon the filing of the second amended complaint the amended affidavit and undertaking upon attachment were filed on behalf of said plaintiffs; that in the said amended undertaking it was recited that its purpose was to meet the situation created by the addition of certain other defendants by the terms of said second amended complaint and to render unambiguous the undertaking already on file; that in said amended affidavit the reason why the chattel mortgage and agreement for a pledge of certain personal property given to secure these several forms of indebtedness had become valueless, as

stated in the original affidavit, was that the said chattel mortgage had been given upon the stock in trade of a merchant and was therefore invalid as against the attachment liens of certain other creditors of the defendant, the aggregate of which was in excess of the value of the property sought to be attached in this action. It is also to be noted that each and all of these amendments to the plaintiffs' original pleadings and papers upon which said attachment was procured in the first instance had been made and filed before the date of the defendant's notice of motion to discharge said attachment. The general section of the Code of Civil Procedure referring to pleadings permit their liberal amendment in cases of this character so long as no new cause of action is attempted to be set up. Section 558 of the Code of Civil Procedure as amended in 1909 also permits the amendment of the affidavit, undertaking, and writ of attachment at any time before the hearing of an application to discharge the attachment and expressly provides that such attachment shall not be discharged if at the time of such hearing the affidavit, undertaking, and writ shall have been so amended as to conform to the provisions of the chapter upon attachments. [8] It follows that if the original pleadings and papers filed by the plaintiff in an action show, even though imperfectly, that the case is one coming within the provisions of the chapter on attachments the defendant moving to discharge such attachment must do so upon the state of the case as the plaintiff's amendments to his pleadings and attachment papers present at the time he makes said motion.

With these preliminary observations in mind we arrive at the state of the case when the defendant's motion to discharge this attachment was made. By that time the Republic Truck Sales Corporation had, by a stipulation of the parties, the substance of which we have not, presented and filed its second amended complaint wherein, as we have seen, it had set forth the entire series of transactions with the defendant out of which its several claims to a recovery had origin and which were embodied in writings which were attached as exhibits to its said complaint. In order to determine whether the contractual obligations thus created against the defendant thereby were such obligations as, at the date of the issuance of said attachment were either made

or were payable in this state it becomes necessary to examine the substance of these writings. The first contract in point of time was that entered into on September 17, 1919, between the Republic Motor Truck Company, which was apparently an agent of its coplaintiff, the Republic Motor Sales Corporation, and the Pioneer Motor Company of San Francisco, of which latter corporation the defendant herein, George Peak, was president and general manager. By the terms of this agreement the Pioneer Motor Company of San Francisco was to become the local dealer for certain Pacific Coast territory in the distribution and sale of Republic trucks, tractors, and parts, and as such dealer and distributor the Pioneer Motor Truck Company was to purchase a considerable number of such trucks and tractors and also a considerable stock of parts, which were to be shipped to it f. o. b. Alma, Michigan, and for which the said dealer was to pay cash on delivery. In case of shipment by carrier the Republic Motor Truck Company, called in the said contract the manufacturer, had the right to draw sight drafts upon the Pioneer Motor Company, called therein "the dealer," with bill of lading attached, which the said dealer was to pay upon presentation. The dealer was also to purchase appliances and parts upon like terms. Said contract, which is quite lengthy, contains the following clause: "26. *Place of performance.* This agreement shall be deemed to have been executed and entered into in the state of Michigan and the same shall be construed, enforced and performed in accordance with the laws thereof." Under this contract, as appears from the statements and admissions of the respective parties hereto, a large amount of motor-trucks, motor vehicles, and parts were sold and delivered to the said dealer. On May 17, 1921, another agreement in writing was entered into between the Republic Motor Truck Company Inc. and the Pioneer Motor Truck Company of San Francisco, wherein it was recited that whereas, the parties thereto had theretofore entered into that certain agreement in writing dated September 27, 1919, and whereas, certain differences had arisen with respect to the carrying out of the terms and conditions of said contract; and whereas, the Republic Motor Truck Company had on March 17, 1921, commenced an action in the superior court of the city of San Francisco against said

Pioneer Motor Truck Company, and had in said action procured certain writs of attachment and garnishment, which had been executed by the seizure of certain properties and credits of said Pioneer Motor Company; and whereas, it was the desire of the respective parties to fully and completely adjust all differences now existing between them and determine their respective rights as against each other, the parties therefore entered into a new arrangement affecting all the motor-trucks which had been shipped to the Pioneer Motor Truck Company and had not as yet been paid for by it and for which the latter now agreed upon certain specified terms and discounts to pay. The said parties also entered into a full and detailed agreement as to future business in respect to the shipment and sales of motor-trucks. The final clause in said agreement provides that this agreement "shall supersede and be substituted for all other agreements and contracts heretofore entered into or executed by the parties hereto." The agreement expressly recites that it was "executed in duplicate at San Francisco, California, this 17th of May, 1921."

[9] Looking to the two writings above referred to, the conclusion seems irresistible that as to any contractual obligations created by or under the terms of the first of these they were, in so far as they were specifically made the subject of the second of these agreements, superseded by it; and that as to those obligations the place of their performance, no matter where it was under the first of these agreements, was changed to the place wherein the second of these agreements was made, and presumptively, at least, was to be performed. This being so, whatever obligations, either existing previously or to be created thereafter, by the Pioneer Motor Company, were, under its said second contract, payable in the state of California, the place where said contract was made. For example, the Pioneer Motor Company, under said second contract, agreed, after certain discounts were allowed, to pay for thirty-seven motor-trucks then in warehouses in San Francisco, and which had not as yet been paid for by it, the factory price upon delivery under said contract, and further agreed to pay all the accumulated warehouse charges upon said trucks. Both of these obligations, it would seem clear, were by the terms of said second contract payable in California, and it therefore follows that

if this agreement of said Pioneer Motor Company was not changed or modified in this respect by some later contract, and if said obligations can be identified, having been unpaid, and as forming a portion of the several obligations which the present action was brought to enforce, the plaintiffs would be entitled to a writ of attachment to protect their recovery upon these specific claims. It is an admitted fact in the case that on May 26, 1921, the contract of May 17, 1921, was by the Pioneer Motor Company assigned and transferred to George Peak, the defendant herein, who thereby assumed all of the obligations of the Pioneer Motor Company existing or to be created under said agreement. It is a further undisputed fact, as shown by the record herein, that the foregoing second agreement continued to be the only existing agreement between said plaintiffs and said Pioneer Motor Company and its successor in interest and in obligation, George Peak, up to the twentieth day of July, 1921, and it therefore follows that whatever liabilities accrued during that period in favor of said plaintiffs and against the Pioneer Motor Company or its transferee, George Peak, were payable in this state. If any of these can be identified as forming a portion of the claims sued upon by the plaintiffs in this action they were susceptible of being protected by the issuance and levy of a writ of attachment in said suit unless the place of their payment has been changed by some later agreement between the parties. The plaintiffs herein allege in their second amended complaint that since the seventeenth day of May, 1921, the defendant George Peak became indebted to the plaintiff Republic Truck Sales Corporation for goods, wares, and merchandise sold and delivered to him, in the city of San Francisco, in a large sum of money, of which a balance amounting to $2,753.94 remains and is unpaid. If these sales were made under the terms of the contract of May 17, 1921, and if the place of payment of the balance due thereon has not been changed by some later contract between the parties, it follows of necessity that as to this indebtedness also the plaintiff would have been entitled to an attachment upon suing therefor in this action. There is another item embraced in both the plaintiffs' original and amended complaints which seems to fall within this same category. In the third count of plaintiffs' original complaint it is alleged

that the defendant Peak is indebted to the plaintiffs in the
sum of $8,423.58 which the plaintiffs advanced to the defend-
ant to apply on certain of the plaintiffs' own drafts upon
defendant and which had remained unpaid, and which sum
the defendant, instead of paying on account of said drafts,
had converted to his own use.  It is true that in said original
complaint the plaintiffs allege that said moneys were ad-
vanced pursuant to the terms and provisions of the con-
tract of July 20, 1921, but in the plaintiffs' second amended
complaint it is alleged that such advancements were made
subsequent to the execution of the chattel mortgage.  In the
plaintiffs' counter-affidavit, filed in resisting the motion to
discharge the attachment, the history of this transaction
is given in detail, from which it appears that these ad-
vancements were made pursuant to the contract of May 17,
1921, and during the month of June, 1921, and prior to the
execution either of the contract of July 20, 1921, or of the
said chattel mortgage, the date of which was August 3, 1921.
Replying to this counter-affidavit upon said motion, the de-
fendant Peak does not deny the fact of such advancements
nor the date thereof as finally fixed in the said plaintiffs'
counter-affidavit, but merely contents himself with calling
attention to the inconsistencies of the plaintiffs' several
statements as to the date of said advancements and with the
assertion that they were within the terms as to repayment
of the contract of July 20, 1921.  When this contract is
looked to it is, as we shall see, silent upon the subject; and
it is inconceivable that the parties to said contract should
have intended thereby that the defendant's liability for the
conversion to his own use in San Francisco of these moneys
so entrusted to him should be transferred as to the place of
payment to the state of Michigan.  The respondents herein,
however, contend that as to these accrued obligations, con-
ceding them to have arisen under the contract of May 17,
1921, and to have accrued between said date and the date
of July 20, 1921, the obligation of the said George Peak to
pay the same, as well as the place of said payment, has been
charfged by the terms of a third contract in writing entered
into between the Republic Truck Sales Corporation and said
George Peak on said July 20, 1921, and which is fully set
forth in his notice of motion to discharge said attachment
and also as an exhibit to the plaintiffs' second amended

complaint. **[10]** When this latter contract is examined it is found to be drawn in practically the identical form of the first contract made between the Republic Motor Truck Company and the Pioneer Motor Company. It deals with transactions in the sale, delivery, and resale of motor vehicles and motor parts to be purchased and distributed by the said George Peak thereafter. It contains no express reference to any accrued obligations between the parties to it under any previous agreements, nor any provision for the payment or for the time or place of payment of any such accrued obligations. Its only reference to former agreements between the parties to it is that embraced in section 22 thereof which is headed ''Term and cancellation provisions'' and which reads: ''This agreement when executed shall supersede and annul all former agreements and orders between said parties, *relative to the sale of Republic trucks,* and the same shall become effective upon the 20th day of July, 1921.'' It would seem reasonably clear that this clause in said agreement could not have been intended to refer to past consummated transactions or to liabilities already fully matured thereunder, but only to the terms and conditions under which sales of Republic trucks were to be made under the provisions of said agreement. If this be true it follows that the clause in this latter agreement which provides that the place of the making and performance thereof shall be the state of Michigan can by no stretch of reason be construed to cover those liabilities of George Peak which had already accrued under the agreement of May 17, 1921, and which were payable in the state of California, and to which liabilities there is not a word of express reference in the agreement of July 20, 1921. We are constrained to hold that as to those already accrued liabilities the place of payment was in the state of California and was unaffected by the provisions of the contract of July 20, 1921. **[11, 12]** If these conclusions be correct as to the meaning and effect of these several written contracts between the parties to this action it follows that nothing that is stated in the affidavits or counter-affidavits filed by or on behalf of the respective parties as to their respective interpretations of the meaning and effect of these writings could affect the situation or be considered by the trial court in passing upon the defendant's motion to discharge said attachment upon the ground

stated; nor could the fact that some portion of the several claims sued upon by the plaintiffs and for the security of which said attachment was sought had accrued under the terms and agreements of the contract of July 20, 1921, and were therefore payable in the state of Michigan, affect the right of the plaintiffs to have said attachment sustained for the protection of such other of the plaintiffs' claims as were clearly identifiable as arising under the terms of the contract of May 17, 1921, and as being thus payable in the state of California. It may also be stated as to any matters set forth in the affidavit of the defendant in support of his motion to discharge said attachment, or in his reply to the counter-affidavits of counsel for said plaintiffs in opposing said motion, in so far as these statements relate to the issue whether the defendant was or was not in fact indebted to the plaintiffs upon their cause of action as set forth in their original and amended complaints, these denials of such indebtedness, if they can be held to amount to such, could not be considered by the court upon said motion, since to so consider or weigh them would be to try out the merits of the action upon a motion to discharge an attachment, which, under the authorities above cited, cannot be done. Upon the state of the case as thus far presented we are of the opinion that as to the several claims of the said plaintiffs which have been above identified as having accrued under the contract of March 17, 1921, they, or rather the real party plaintiff in this action, the Republic Truck Sales Corporation, was entitled to have an attachment process issued, levied, and maintained, and that the trial court was therefore in error in its order discharging in its entirety said attachment.

The further phase of this case presented for our consideration concerns the fourth and final writing entered into between the parties hereto. This was a chattel mortgage executed by the defendant herein George Peak in the city and county of San Francisco to the Republic Truck Sales Corporation covering property situate in said city and county and purporting to secure an indebtedness of said Peak to said mortgagee in the sum of $75,000; and also to cover and secure whatever further indebtedness might arise for goods thereafter to be sold to said Peak by said mortgagee. The plaintiff pleads, and the defendant in his

affidavits upon said motion admits, that this mortgage was intended to secure all past and future indebtedness of Peak to the Republic Truck Sales Corporation. This mortgage by its terms embraces an express agreement on the part of said. Peak to pay said indebtedness purporting to be secured thereby. The plaintiff Republic Sales Corporation in both its original and amended affidavit for attachment deposes that said chattel mortgage has without any act of the said plaintiff become valueless, for the reason that the property embraced in said mortgage was the stock in trade of a merchant and hence not expressly made mortgageable under the provisions of section 2955 of the Civil Code, providing for personal property mortgages; and for the further reason the other creditors of said defendant Peak have levied attachments upon said property to an extent exceeding its value and which attachments are prior in time to the plaintiff's attachment herein. The said plaintiff sets up all of these matters in the second amended complaint and prays for a personal judgment against said defendant Peak for the sums due under said agreement embodied in said mortgage and which, as it alleges, are made up in the aggregate of the several sums due and unpaid to said plaintiff under the several former contracts between the parties. The defendant Peak in his motion to discharge said attachment does not enumerate among his grounds for said motion the ground that the plaintiffs in their second amended complaint have stated a new and different cause of action, and apparently does not so contend here. The gravamen of the defendant's contention is that the plaintiff's entire cause of action, as set forth in either his first or amended complaints, is based upon the contract of July 20, 1921, and that such contract was by its terms made and was payable in the state of Michigan. The plaintiffs in reply to this contention assert that as to a large part of its claims they were based upon the contract of May 17, 1921, which was made and was payable in the state of California, and as to these it was entitled to have its said attachment maintained. We are of the opinion that the foregoing analysis of said contracts and of said claims indisputably shows this to be true. The plaintiffs make the further contention that even if it were to be conceded that any portion or even all of the indebtedness of the said defendant to the said plaintiffs

come within the terms of the contract of July 20, 1921, as to place of payment, the defendant has by the terms of his chattel mortgage agreed to pay his said indebtedness and the whole thereof in the state of California and that under said agreement, said mortgage having as to its security become valueless, the plaintiffs were entitled to sue and attach in this state. There is respectable authority holding that where a chattel mortgage contains a covenant to pay the debt secured thereby, the mortgagee is not restricted to his mortgage security but may on default bring an action at law to recover the mortgage debt when the property which secured the same has become valueless. (11 Corpus Juris, p. 746.) [13] In such a case this court has held that the policy embraced in section 726 of the Code of Civil Procedure, providing for but one form of action to foreclose a mortgage, is not violated by permitting the creditor to bring a personal action upon the debt where the lien of the mortgage has become valueless or is lost. (*Otto* v. *Long,* 127 Cal. 471, 477 [59 Pac. 895]; *Dyer etc. Co.* v. *Abbott,* 52 Cal. App. 545 [199 Pac. 340].) We are therefore of the opinion that the contractual indebtedness upon which the plaintiffs brought this action was one which by the agreements of the parties was payable in the state of California at the time this action was commenced and the attachment in question sought therein, and hence that the trial court was in error in making and entering its order discharging said attachment.

The order is reversed.

Myers, C. J., Lawlor, J., Waste, J., Lennon, J., Seawell, J., and Shenk, J., concurred.

Rehearing denied.